# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CYNTHIA L. ROSEBERRY-ANDREWS,

    *Plaintiff*,

v.

HEATHER WILSON, Secretary of the Air Force,

    *Defendant*.

Civil Action No. 15-2051 (TJK)

## MEMORANDUM OPINION AND ORDER

Roseberry-Andrews, proceeding *pro se*, challenges a number of decisions by the Air Force Board for Correction of Military Records (the "Board") denying her requests to modify her military records. She asks this Court to rule that these denials were arbitrary and capricious and to remand to the Board for a number of forms of relief, including monetary compensation. Defendant moves to dismiss the case for lack of subject matter jurisdiction, or, alternatively, for summary judgment.[1] The Court concludes that Roseberry-Andrews' request for monetary relief divests this Court of subject matter jurisdiction over her complaint. As a result, the Court transfers the case to the Court of Federal Claims.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes Heather Wilson as the Defendant. In evaluating Defendant's Motion, the Court considered Roseberry-Andrews' Verified Complaint, ECF No. 1 ("Compl."); Defendant's Memorandum in Support of her Motion to Dismiss or for Summary Judgment, ECF No. 12-1 ("Def.'s MTD"); Plaintiff's Memorandum in Support of her Cross-Motion for Summary Judgment, ECF No. 17 ("Pl.'s Opp."); Defendant's Reply and Opposition, ECF No. 20 ("Def.'s Reply"); and the excerpts of the Administrative Record filed by the parties, ECF No. 23 (hereinafter "AR __").

## I. Factual and Procedural Background

### A. Roseberry-Andrews' Allegations

Senior Master Sergeant Cynthia Roseberry-Andrews enlisted in the Air National Guard in 1982. AR 18. After twelve years in the Air National Guard, she transferred to the United States Air Force Reserve's "Individual Mobilization Augmentee" ("IMA") program. Compl. ¶ 3; AR 18. An IMA is a part-time reservist who is assigned to an active-duty unit. Def.'s MTD at 2. In August 2002, Roseberry-Andrews accepted a position as a Program Manager in the Human Resources Directorate at the Defense Contract Management Agency ("DCMA"). Compl. ¶ 10.

Roseberry-Andrews alleges that she was harmed in a number of ways while serving at the DCMA. Broadly speaking, her allegations fall into two categories. First, Roseberry-Andrews alleges that two of her active-duty orders should have been medically extended due to an ankle injury that she suffered, which would have provided her various employment-related benefits. Second, she alleges that various Air Force personnel retaliated against her in a number of ways for claiming that certain Air Force personnel had engaged in improper conduct.

#### 1. Roseberry-Andrews' Ankle Injuries While Serving on Active-Duty Orders

Roseberry-Andrews injured her ankle twice while serving on active-duty orders. She was placed on active-duty orders from January 1, 2003, to May 28, 2004. AR 5. In August 2003, she fell while conducting agility and obedience training with a show dog, severely injuring her left ankle. Compl. ¶ 39; AR 8. The injury was determined to be in the "line of duty," meaning she was on active duty and did not act negligently or irresponsibly in causing it. Compl. ¶ 40; AR 30-31. On March 25, 2004, Roseberry-Andrews underwent reconstructive ankle surgery. Compl. ¶ 42. After the surgery, she went on convalescent leave for thirty days because she could

not drive to work. *Id.* ¶¶ 48-50, 55. When she returned to work, Roseberry-Andrews expected to be placed on active duty while undergoing physical therapy, but instead she was placed on incapacitation pay for six months. *Id.* ¶¶ 56-57, 59. Thus, her active-duty orders for this tour ended on May 28, 2004. AR 8.

In November 2005, DCMA selected Roseberry-Andrews for an active-duty deployment to the Middle East from September 2, 2006, to April 15, 2007. *Id.* ¶ 82. During that deployment, she reinjured her ankle. *Id.* ¶ 84. Upon returning to the United States, her post-deployment physician referred her to an orthopedic clinic. *Id.* ¶ 85. An orthopedic examination revealed that Roseberry-Andrews' ankle was broken in two places, necessitating two more surgeries and additional physical therapy. *Id.* ¶ 86. Roseberry-Andrews was placed on "Medical Hold" and her active-duty orders were not extended beyond April 15, 2007. *Id.* ¶¶ 82, 87-88.

### 2. Retaliation Against Roseberry-Andrews

Roseberry-Andrews also alleges that various Air Force personnel engaged in "unlawful personnel practices." *Id.* ¶ 11. She claims that when she refused to participate in those practices, those personnel, including Captain Michael Godwin and Colonel Mary Purdue, retaliated against her in number of ways. For instance, Roseberry-Andrews alleges that:

- In February 2004, Roseberry-Andrews received a Letter of Counseling alleging that she sent an email to Captain Goodwin that was "condescending, confrontational, and disrespectful." *Id.* ¶¶ 28-29.

- In March 2004, Colonel Purdue called a military human resources office to inquire whether Roseberry-Andrews had been "erroneously enlisted" in hopes of removing her from the military. *Id.* ¶¶ 27, 35; AR 5. She was properly enlisted. Compl. ¶ 36.

- Before Roseberry-Andrews' ankle surgery in March 2004, Colonel Purdue called Walter Reed National Military Medical Center to see whether the surgery could be cancelled and whether Roseberry-Andrews could return to work immediately after the surgery. *Id.* ¶¶ 45-54. The hospital declined these requests. *Id.* ¶¶ 48, 54.

3

- On May 18, 2004, Lieutenant Colonel Karen Cox issued a Letter of Reprimand to Roseberry-Andrews and established an Unfavorable Information File. *Id.* ¶¶ 67, 71; AR 129-35.

- In June 2005, Captain Godwin issued an unfavorable Enlisted Performance Report ("EPR") stating that, among other things, he had "lost faith and confidence in [Roseberry-Andrews'] ability to conduct herself in a manner befitting a [Senior Non-Commissioned Officer]." Compl. ¶¶ 72-73; AR 136-37; Def.'s MTD at 6 n.1.

- After Roseberry-Andrews had redeployed in April 2007, she requested to be transferred to the DCMA General Counsel's Office ("DCMA-GC") as an Advisor-Paralegal. Compl. ¶ 92. DCMA-GC submitted the transfer request, AR 170-71, but Michael McLaughlin (then the Director of Human Resources at DCMA) instead converted the billet for Roseberry-Andrews' paralegal position to an Aircraft Avionics position in Palmdale, California. Compl. ¶¶ 100-102; AR 172. McLaughlin informed Roseberry-Andrews that she would be moved to the Individual Ready Reserve unless she could find another position in her specialty in six months. AR 172.

- Roseberry-Andrews did not receive payment for 105 days of work that she performed between July 1, 2008, and October 13, 2008. Compl. ¶ 96.

- On April 1, 2009, McLaughlin and others transferred Roseberry-Andrews to the Individual Ready Reserve. *Id.* ¶ 104. Roseberry-Andrews ultimately was able to reenlist after briefing the Chief of Military Personnel for the Air Force Reserve. *Id.* ¶¶ 109-112.

At the time the complaint was filed, Roseberry-Andrews continued to serve as an IMA reservist in the Air Force. *Id.* ¶ 3.

### B. Roseberry-Andrews' Efforts to Seek Redress From the Board

Roseberry-Andrews has sought redress for these grievances from the Board several times. On November 29, 2007, she filed her first application. *Id.* ¶ 115; AR 14-29. Brought pursuant to 10 U.S.C. § 1552, AR 14, it requested that (1) her active-duty orders ending in May 2004 and April 2007, respectively, be medically continued due to her ankle injury and that she be paid associated back pay and medically-related costs, (2) that her position be transferred to DCMA-GC effective March 20, 2008, and (3) that several military records be expunged. Compl. ¶ 116;

4

AR 4. On March 23, 2009, the Board retroactively extended the end date of Roseberry-Andrews' first active-duty orders from May 28, 2004, to December 28, 2004, but denied all the other relief she had requested. AR 11-13.

On May 29, 2009, Roseberry-Andrews filed a petition for reconsideration with the Board. Compl. ¶ 139. In addition to the relief requested in her original petition, Roseberry-Andrews also requested pay for 105 days she allegedly worked in 2008, placement on an active-duty tour in the DCMA General Counsel's Office, and favorable changes to two EPRs (proposing, for example, to change "Ineffective" to "Exceptionally effective leader," AR 136, 401). *See* AR 393-416; Compl. ¶¶ 138-139. On January 18, 2011, the Board again denied relief, concluding that the bulk of her application "consist[ed] of . . . information already addressed by the previous Board." AR 176; Compl. ¶ 140.

At this point, Roseberry-Andrews' counsel wrote a number of letters to the Executive Director of the Board complaining that the Board had denied Roseberry-Andrews due process. *See* AR 1873-77 (Apr. 27, 2011 Ltr.); AR 1870-71 (Oct. 5, 2011 Ltr.); AR 1867-69 (Apr. 20, 2012 Ltr.). These letters incorporated her previous requests for relief and also added requests for a promotion and associated back pay as well as retroactive placement on active-duty orders from September 1, 2010, until the Board completed reviewing her case. AR 1867-69. On October 23, 2012, the Board denied the majority of the relief she had requested, but it did further extend the end date of her first active-duty order from December 28, 2004, to September 9, 2005. AR 806.

On November 30, 2012, Roseberry-Andrews' counsel wrote a letter to the Director of the Board requesting a meeting. AR 1909-20. On January 2, 2013, the Director responded that he would not meet with Roseberry-Andrews' counsel, that the Board's decisions were thoroughly considered, and that Roseberry-Andrews could seek further relief in federal court. AR 1921.

5

C.     **Roseberry-Andrews' Complaint**

On October 15, 2015, Roseberry-Andrews filed this action. *See* ECF No. 1. She asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* Compl. ¶¶ 1-2. She also asserts that she has exhausted her administrative remedies and that her claims are timely pursuant to the six-year statute of limitations set forth in 28 U.S.C. § 2501, the statute governing the timeliness of claims over which the Court of Federal Claims has jurisdiction. Compl. ¶¶ 5-6. She appears to assert a single cause of action, under the APA. *Id.* ¶¶ 224-231.

The complaint reiterates many of the same allegations previously presented to the Board. *Id.* ¶¶ 7-113. Ultimately, Roseberry-Andrews seeks a "ruling" that the "Boards' denial of full relief was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable law or regulation and remand to the Board for the following relief . . . ." *Id.* ¶ 232.

The "following relief" runs to seventeen paragraphs and can be grouped into four categories: (1) retroactive adjustments to her active-duty status, (2) adjustments to her rank and position, (3) monetary relief, and (4) amendments of her performance reviews. First, Roseberry-Andrews requests retroactive extensions of her 2003-2005 and 2006-2007 active-duty orders and retroactive placement on active duty from September 1, 2010, until the Board "provides full relief." *Id.* ¶¶ 233, 235. Second, she seeks to be placed into the advisor-paralegal position in the DCMA General Counsel's office, retroactive promotion to the grade of Chief Master Sergeant, pay grade E9, effective April 1, 2009, and modification to her reenlistment for a full six-year term. *Id.* ¶¶ 234, 236, 238. Third, she requests a number of forms of monetary relief, including a remand to the Board to: "[a]djust [her] pay accordingly, including all cost of living and time-in-grade increases, interest and retirement points," *id.* ¶ 237; "[p]ay [her] all accrued leave with compounded interest," *id.* ¶ 239; "[p]ay [her] all interest, penalty, and fees for her LOD injury

6

medical travel," *id.* ¶ 241; "[p]ay" her compound interest as a result of the corrections made pursuant to the Orders of March 23, 2009, and October 23, 2012, *id.* ¶ 242; "[r]eimburse [her] for all investment and retirement account losses, penalty fees, early withdrawal fees and taxes, reinstatement fees, mortgage refinance fees, and other lost benefits or compensations during the entire AFBCMR period to present," *id.* ¶ 243; "[r]eimburse [her] all medical, medication and dental treatment costs," *id.* ¶ 244; and pay for attorneys' fees, *id.* ¶ 248. Last, Roseberry-Andrews seeks expungement of one EPR and favorable corrections to two others. *Id.* ¶¶ 245-247.

## II. Legal Standard

"To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear h[er] claims." *Remmie v. Mabus*, 898 F. Supp. 2d 108, 114 (D.D.C. 2012). "It is well established that '[c]ourts must construe *pro se* filings liberally.'" *Fermin v. United States*, 268 F. Supp. 3d 228, 231 (D.D.C. 2017) (alteration in original) (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)). But a *pro se* plaintiff "must nevertheless establish a clear basis for jurisdiction." *Id.* "The court may . . . examine 'other pleadings to understand the nature and basis of [plaintiff's] *pro se* claims.'" *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 84 (D.D.C. 2012) (alteration in original) (quoting *Chandler v. W.E. Welch & Assocs.*, 533 F. Supp. 2d 94, 102 (D.D.C. 2008)).

"It is 'axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" *Houseal v. McHugh*, 962 F. Supp. 2d 286, 291 (D.D.C. 2013) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). The APA, and the Tucker Act, 28 U.S.C. § 1491(a)(1), "both waive sovereign immunity, allowing plaintiffs to sue the United States in specific circumstances." *Martin v. Donley*, 886 F. Supp. 2d 1, 7 (D.D.C. 2012). "Under the APA, a plaintiff may sue the United States 'in the district courts

7

for remedies *other* than money damages arising from an agency's unlawful action.'" *Id.* (quoting *Bublitz v. Brownlee*, 309 F. Supp. 2d 1, 6 (D.D.C. 2004)). Alternatively, "[u]nder the Tucker Act, the Court of Federal Claims is vested with exclusive jurisdiction over cases involving non-tort money damages in excess of $10,000." *Tootle v. Sec'y of Navy*, 446 F.3d 167, 169 (D.C. Cir. 2006).[2]

The D.C. Circuit "uses a self-described 'bright line' approach to the Tucker Act, considering cases within its scope 'only if the plaintiff seeks money or the district court grants it.'" *Remmie*, 898 F. Supp. 2d at 116 (quoting *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006)). "[A] claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Smalls*, 471 F.3d at 190 (quoting *Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995)).

"[W]here the jurisdiction of the court turns on whether the complaint seeks monetary relief, the court must generally limit itself to the four corners of the complaint." *Tootle*, 446 F.3d at 174. "[W]here a claim *by its terms* seeks money from the federal government, it falls within the Tucker Act." *Palacios v. Spencer*, 267 F. Supp. 3d 1, 5 (D.D.C. 2017) (citing *Van Drasek v. Lehman*, 762 F.2d 1065, 1071 (D.C. Cir. 1985)).

Courts "only look to the essence of a complaint in the absence of an explicit request for monetary relief." *Schwalier v. Hagel*, 734 F.3d 1218, 1221 (D.C. Cir. 2013). "To decide whether a plaintiff is attempting to sidestep Tucker Act jurisdiction, the court must look to the substance rather than the form of the complaint." *Van Allen v. U.S. Dep't of Veterans Affairs*,

---

[2] If a plaintiff alleges less than $10,000 in damages, the "Little Tucker Act" vests "concurrent jurisdiction in the Court of Federal Claims and in the United States district courts." *Charlton v. Donley*, 611 F. Supp. 2d 73, 75 (D.D.C. 2009) (citing 28 U.S.C. § 1346(a)(2)).

8

925 F. Supp. 2d 119, 125 (D.D.C. 2013) (quoting *Bliss v. England*, 208 F. Supp. 2d 2, 6 (D.D.C. 2002)). "A complaint is not in essence one for monetary damages if the only remedy requested is 'non-monetary relief that has considerable value independent of any future potential for monetary relief.'" *Smalls*, 471 F.3d at 190 (quoting *Tootle*, 446 F.3d at 176). "The fact that in seeking the correction of a military record the plaintiff may, if successful, obtain monetary relief from the United States in subsequent administrative proceedings is insufficient to deprive the district court of jurisdiction." *Id.*

### III. Analysis

The threshold question before the Court is whether Roseberry-Andrews' complaint "explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Smalls*, 471 F.3d at 190 (quoting *Kidwell*, 56 F.3d at 284). If it does, the Court must dismiss or transfer the case for want of subject matter jurisdiction because exclusive jurisdiction lies with the Court of Federal Claims under the Tucker Act. This, the D.C. Circuit has instructed, is a "bright line" rule. *Id.* at 189.

Defendant contends that Roseberry-Andrews "explicitly requests monetary relief." Def.'s MTD at 13. Roseberry-Andrews counters that her complaint "does not explicitly seek money" because she requests that the Court find that the Board's decisions were arbitrary and capricious and remand for the relief she seeks. Pl.'s Opp. at 9; *see also id.* at 3, 17. The Court has little choice but to conclude that Roseberry-Andrews explicitly seeks monetary relief. In her prayer for relief, she requests an "[a]djust[ment] [of her] pay [as a result of a requested promotion], including all cost of living and time-in-grade increases, interest and retirement points," Compl. ¶ 237; "[p]ay [for] all accrued leave with compounded interest," *id.* ¶ 239; "[p]ay" for "all interest, penalty, and fees for her LOD injury medical travel," *id.* ¶ 241; "[p]ay" for compounded interest as a result of the corrections made pursuant to the Orders of March 23,

9

2009, and October 23, 2012, *id.* ¶ 242; "[r]eimburse[ment] . . . for all investment and retirement account losses, penalty fees, early withdrawal fees and taxes, reinstatement fees, mortgage refinance fees, and other lost benefits or compensations during the entire AFBCMR period to present," *id.* ¶ 243; "[r]eimburse[ment] [for] . . . all medical, medication and dental treatment costs," *id.* ¶ 244; and payment for attorney's fees and costs, *id.* ¶ 248.

These requests are "unambiguously monetary in nature." *Schwalier*, 734 F.3d at 1222; *see also Palacios*, 267 F. Supp. 3d at 5 (claim for back pay is "on its face, a claim for money damages"). In fact, Roseberry-Andrews' request for monetary relief is much more explicit and detailed than the plaintiff's request in *Schwalier*, where the D.C. Circuit concluded that it did not have jurisdiction because the complaint sought monetary relief. 734 F.3d at 1222. The monetary request in that case—"any other relief, including active duty back pay and retired pay, as this Honorable Court deems just and proper," *id.* at 1219—was merely part of a catch-all relief provision. Here, Roseberry-Andrews' prayer for relief includes a laundry list of explicit requests ranging from back pay to payment for medical expenses to reimbursement for mortgage refinancing fees.

There is one procedural wrinkle, however, that at least potentially complicates what would otherwise be a straightforward conclusion that the Court lacks subject matter jurisdiction as a result of Roseberry-Andrews' request for monetary relief. Roseberry-Andrews argues that this Court is not divested of jurisdiction because she has "petitioned this court to 'review' the Agency's decisions and remand her AFBCMR petition to the AFBCMR to properly correct her records." Pl.'s Opp. at 9. Of course, the mere fact that her complaint requests other types of relief—such as correction of her records—in addition to monetary relief does not help her. As long as the complaint "in whole or in part . . . seeks . . . monetary relief," it is "subject to the

Tucker Act and its jurisdictional consequences." *Smalls*, 471 F.3d at 190 (quoting *Kidwell*, 56 F.3d at 284); *see also Brown v. West*, No. 94-cv-2674-LFO, 1995 WL 623038, at *4 (D.D.C. Oct. 13, 1995) ("[I]t would not make sense to allow plaintiff to split his equitable claims from his monetary claims. So doing would render the *Kidwell* bright line rule a nullity.").

However, Roseberry-Andrews' complaint requests "remand to the Board" for *all* of the various forms of relief she seeks, including monetary relief. That raises what appears to be a novel question in this Circuit: whether a request to *remand* for monetary relief—instead of seeking such relief directly from the Court—is a distinction that matters for purposes of determining whether this Court has subject matter jurisdiction in light of the Tucker Act. Although it is a close case, the Court holds that it is not.

The Court reaches this conclusion because Roseberry-Andrews appears to seek to invoke the Court's authority to obtain relief (including monetary relief) by ordering the AFBCMR to provide it, rather than by merely instructing the AFBCMR to conduct further proceedings. The language in the complaint reflects as much, as she requests "remand to the Board *for* the following relief," as opposed to merely for the consideration of that relief after further proceedings. Compl. ¶ 232 (emphasis added). There is simply no other reason for her to have set forth the requested relief in such detail, other than to request that the Court ensure that she receives it from the AFBCMR. Thus, just as if she had requested the Court award her that relief directly, the monetary relief she requests here "would . . . flow directly from the exercise of the court's jurisdiction." *Motorola, Inc. v. Perry*, 917 F. Supp. 43, 47 (D.D.C. 1996). As a result, the Court concludes that it does not have subject matter jurisdiction over her complaint.

The Court's conclusion is bolstered by the contrast between this case and the line of cases holding that a district court retains jurisdiction when any monetary relief would come from

11

"subsequent administrative proceedings." *Smalls*, 471 F.3d at 190; *see also Tootle*, 446 F.3d at 175; *Remmie*, 898 F. Supp. 2d at 117-18; *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 52-53 (D.D.C. 2005). None of the plaintiffs in those cases explicitly sought remand for an award of carefully specified monetary damages, as Roseberry-Andrews does here. In addition, in each of those cases, the court emphasized that any monetary relief recovered by the plaintiffs would be an uncertain downstream effect of the district court's ruling. *See Tootle*, 446 F.3d at 175 ("[A]ny monetary benefits that might flow if Tootle prevails on his non-monetary claims will not come from the District Court's exercise of jurisdiction, 'but from the structure of statutory and regulatory requirements governing compensation when a servicemember's files change.' Indeed, we have no way of knowing whether Tootle ever will be entitled to any monies if he succeeds before the District Court." (quoting *Kidwell*, 56 F.3d at 285-86)); *Smalls*, 471 F.3d at 190-91 ("[B]ut it is clear that [relief] would come as a result of administrative proceedings . . . and not as a result of the adjudication of the claims in his amended complaint"); *Remmie*, 898 F. Supp. 2d at 118 ("Any financial benefit Plaintiff might receive in the future, therefore, would be the result of a 'subsequent administrative proceeding[]' and is thus 'insufficient to deprive the district court of jurisdiction.'" (quoting *Smalls*, 471 F.3d at 190)); *Calloway*, 366 F. Supp. 2d at 52 ("[A]ny monetary damages would not flow from the case before this Court, but rather from later proceedings before various Army boards of review.").

By contrast, in this case, because Roseberry-Andrews seeks to invoke the Court's authority to obtain monetary relief by ordering the AFBCMR to provide it to her, rather than by merely instructing the AFBCMR to conduct further proceedings, she seeks relief that is not similarly dependent on subsequent administrative proceedings.

Roseberry-Andrews' other arguments are more easily disposed of. She argues that Tucker Act jurisdiction is not implicated because she does not put a precise dollar figure on her requested monetary relief. Pl.'s Opp. at 9. But *Schwalier* forecloses making an end-run around the Tucker Act by failing to request a specific amount of money. *See* 734 F.3d at 1221 ("To permit plaintiffs to evade the strictures of the Tucker Act by setting forth the formula for their monetary relief rather than asking for a specified amount of 'damages' in so many words would undo the carefully erected structure that Congress set forth."). In addition, the Court agrees with Defendant that Roseberry-Andrews seeks well over $10,000 in damages, Def.'s MTD at 15 & n.4, so this Court may not retain jurisdiction under the Little Tucker Act. Thus, the Court concludes that it lacks subject matter jurisdiction because Roseberry-Andrews' complaint is subject to the Tucker Act.[3]

## IV. Transfer

A federal court must "make a single decision upon concluding that it lacks jurisdiction—whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court . . . that has jurisdiction" under 28 U.S.C. § 1631. *Tootle*, 446 F.3d at 173 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988)).

"There are three elements to a section 1631 transfer: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer can be made only to a court in which the action could have been brought at the time it was filed or noticed." *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 277 (D.D.C.

---

[3] In light of this conclusion, the Court does not rule on the parties' cross-motions for summary judgment. *See Del., Dep't of Health & Soc. Servs., Div. of Medicaid & Med. Assistance v. U.S. Dep't of Health & Human Servs.*, No. CV 16-1734 (CKK), 2017 WL 3412077, at *4 (D.D.C. Aug. 8, 2017) ("A court's decision regarding its 'subject-matter jurisdiction necessarily precedes a ruling on the merits . . . .'") (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).

2015) (quoting *Fasolyak v. The Cradle Soc'y, Inc.*, No. 06-cv-01126 TFH, 2007 WL 2071644, at *11 (D.D.C. July 19, 2007)). "The legislative history of § 1631 indicates that Congress contemplated that it would provide assistance to those parties who were 'confused about the proper forum for review.'" *Levy v. SEC*, 462 F. Supp. 2d 64, 66 (D.D.C. 2006) (quoting *Am. Beef Packers, Inc. v. Interstate Commerce Comm'n*, 711 F.2d 388, 390 (D.C. Cir. 1983)). "Transfer of a case is usually preferable to dismissal." *Sierra Club v. Tenn. Valley Auth.*, 905 F. Supp. 2d 356, 364 (D.D.C. 2012).

### A. Lack of Subject Matter Jurisdiction

As explained above, Roseberry-Andrews' complaint "in whole or in part" seeks monetary relief. Thus, this Court lacks subject matter jurisdiction because exclusive jurisdiction rests with the Court of Federal Claims. *Kidwell*, 56 F.3d at 284; *Brown*, 1995 WL 623038, at *4.

### B. The Interest of Justice

"In determining whether a transfer is in the interest of justice, the equities of dismissing a claim when it could be transferred should be carefully weighed." *Bethea v. Holder*, 82 F. Supp. 3d 362, 366 (D.D.C. 2015) (quoting *Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996)). "Courts have found that transfer is 'in the interest of justice' when, for example, the original action was misfiled by a *pro se* plaintiff or by a plaintiff who, in good faith, misinterpreted a complex or novel jurisdictional provision." *Janvey v. Proskauer Rose, LLP*, 59 F. Supp. 3d 1, 7 (D.D.C. 2014) (collecting cases). "Courts have also looked to whether it would be time consuming and costly to require a plaintiff to refile his or her action in the proper court or whether dismissal would work a significant hardship on plaintiff who would likely now be time barred from bringing his or her action in the proper court." *Id.* at 7. But "transfer is not 'in the interest of justice' where that review reveals that success on the merits appears unlikely." *Boultinghouse v. Lappin*, 816 F. Supp. 2d 107, 113 (D.D.C. 2011).

Here, the Court concludes that it would be in the interest of justice to transfer this case to the Court of Federal Claims. Roseberry-Andrews is proceeding *pro se* and the question of whether the Court of Federal Claims has jurisdiction under the Tucker Act involves a "complex or novel jurisdictional provision." *Janvey*, 59 F. Supp. 3d at 7; *cf. Sharp v. Weinberger*, 798 F.2d 1521, 1522 (D.C. Cir. 1986) (Scalia, J.) ("If there is a less profitable expenditure of the time and resources of federal courts and federal litigants than resolving a threshold issue of [Tucker Act jurisdiction], it does not come readily to mind."); *Martin*, 886 F. Supp. 2d at 10 ("While this Court recognizes the effort made by Congress to ensure that claims for money damages against the United States receive uniform adjudication, the Court joins other judges from the courts of this Circuit in noting its frustration with the quagmire that is the Tucker Act and its imprecisely drawn jurisdictional provision."). It may also be "time consuming and costly" to require Roseberry-Andrews, proceeding *pro se*, to refile her action. On the briefing before the Court, it is unclear whether dismissal "would work a significant hardship on plaintiff who would likely now be time barred from bringing . . . her action in the proper court." *Janvey*, 59 F. Supp. 3d at 7. As discussed below, neither party has provided fulsome briefing on when Roseberry-Andrews' claim(s) accrued. But "once a suit is dismissed, even if without prejudice, 'the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.'" *Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)). Thus, the Court concludes that transfer, instead of dismissal, would be in the interest of justice.

C. **Transfer to the Court of Federal Claims**

Defendant argues that "dismissal rather than transfer is the most appropriate remedy" because the Court of Federal Claims also does not have subject matter jurisdiction. Def.'s MTD

at 15. Specifically, Defendant argues that statutes of limitations for causes of action against the United States are jurisdictional and that Roseberry-Andrews' claim for "military pay" in this case is time-barred. *Id.* at 16. The Court disagrees that Roseberry-Andrews' claims are clearly time-barred, and thus it concludes that transfer to the Court of Federal Claims is proper.

As an initial matter, "it remains within this Court's discretion to transfer an action *sua sponte*." *Amerijet Int'l, Inc. v. DHS*, 43 F. Supp. 3d 4, 21 (D.D.C. 2014). Thus, the fact that the government moved to dismiss instead of transfer does not prohibit the court from transferring the case. *See, e.g.*, *Nat'l Fed'n of Blind v. U.S. Dep't of Transportation*, 78 F. Supp. 3d 407, 415 (D.D.C. 2015) (transferring case where government moved to dismiss on the ground claims were time-barred).

Nevertheless, the Court can only transfer this action to a court where the case "could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631; *see also Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. DHS*, 490 F.3d 940, 944 (Fed. Cir. 2007) (a district court "could properly transfer this case only if the Court of Federal Claims possesses jurisdiction").

The statute of limitations for claims over which the Court of Federal Claims has jurisdiction, 28 U.S.C. § 2501, is jurisdictional. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134, 139 (2008). Thus, the Court of Federal Claims would not have subject matter jurisdiction—and the case could not have been "brought at the time it was filed or noticed," 28 U.S.C. § 1631—over claims that are time-barred.

"A claim accrues, for purposes of the Tucker Act, 'as soon as all events have occurred that are necessary to enable the plaintiff to bring suit.'" *Fuentes v. United States*, 100 Fed. Cl. 85, 89-90 (2011) (quoting *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc)). The Tucker Act "does not itself provide the substantive cause of action; instead a

plaintiff must look elsewhere for the source of substantive law on which to base a Tucker Act suit against the United States." *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (quoting *Martinez*, 333 F.3d at 1303). And "[t]hat source must be 'money-mandating.'" *Id.* (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Defendant argues that Roseberry-Andrews' claims are time-barred because "a Tucker Act claim seeking military pay accrues when a reservist is separated from active duty" and, here, Roseberry-Andrews was placed on Individual Ready Reserve on April 1, 2009—more than six years before she filed the complaint. Def.'s MTD at 16.

The Court concludes that this argument in insufficient to dismiss Roseberry-Andrews' complaint because whether her claims are time-barred is more complex than Defendant suggests. Even if Defendant is correct that Roseberry-Andrews' claims regarding medical extension of her 2003-2005 and 2006-2007 active-duty orders are time-barred (an issue on which the Court takes no position), Defendant does not address many other claims in Roseberry-Andrews' complaint. Roseberry-Andrews seeks, for instance, "compounded interest . . . due to the AFBCMR technician failing to include interest verbiage" in the Board's Order of October 23, 2012, extending one of Roseberry-Andrews' active-duty tours. Compl. ¶ 242. The Federal Circuit has held that 10 U.S.C. § 1552, the statute under which Roseberry-Andrews brought her original Board petition, AR 14, can be money-mandating "when the correction board has granted relief and the service member seeks to enforce or challenge the implementation or scope of the remedial order." *Peoples v. United States*, 87 Fed. Cl. 553, 569 (2009) (citing *Martinez*, 333 F.3d at 1315 n.4). Thus, if Roseberry-Andrews' complaint is construed as bringing a challenge

17

under 10 U.S.C. § 1552 to enforce the Order of October 23, 2012, that claim could be timely if it accrued in 2012. *See Martinez*, 333 F.3d at 1303.[4]

Because the Court of Federal Claims may have jurisdiction over at least some of Roseberry-Andrews' claims, the Court believes the correct course of action is to transfer the entire case for a determination of precisely which claims, if any, are time-barred. *See, e.g.*, *Reaves v. Hagel*, No. 12-CV-795-FL, 2013 WL 5674981, at *10 (E.D.N.C. Oct. 17, 2013) (transferring case to the Court of Federal Claims where plaintiff's claim was not "plainly barred" by statute of limitations); *Prawoto v. PrimeLending*, 720 F. Supp. 2d 1149, 1161 (C.D. Cal. 2010) (transferring case involving a "obscure and confusing jurisdictional doctrine[]" where the court concluded that "at least some claims may be timely and that the interests of justice favor transfer over dismissal"). This Court's "determination that the action 'could have been brought' before the transferee court does not relieve or otherwise exempt a plaintiff from meeting its burden to establish jurisdiction before the transferee court." *Stockton E. Water Dist. v. United States*, 62 Fed. Cl. 379, 389 (2004); *cf. Chisolm v. United States*, 82 Fed. Cl. 185, 197 (2008) ("The Federal Circuit has emphasized that issues within our court's exclusive jurisdiction must be decided in the first instance in our court. . . . The question of when Mr. Chisolm's back pay claims accrued is just such an issue.") (citation omitted).

---

[4] To be clear, this Court is not holding that Roseberry-Andrews' complaint should be construed in this manner, that she has established that any of her claims are timely, or that she validly states a claim for compound interest. It simply concludes that some of her request for relief may not be time-barred.

18

## V. Conclusion and Order

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss, ECF No. 12. The Court further **ORDERS** that the above-captioned actioned be transferred to the Court of Federal Claims.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 22, 2018